**FILED**

MAR 2 0 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JONATHAN HOUSE
12213 Castle Pines Drive
Beltsville, MD 20705

        Plaintiff,

        v.

DIRK KEMPTHORNE
Secretary of the U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

*Serve:*
Dirk Kempthorne, Secretary
U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

and

Michael B. Mukasey
Attorney General of the United States
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

and

Jeffrey A. Taylor
United States Attorney
555 4th Street, N.W.
Washington, DC 20530

        Defendant.

Civil Action No.:

Case: 1:08-cv-00477
Assigned To : Leon, Richard J.
Assign. Date : 3/20/2008
Description: Employ. Discrim.

JURY ACTION

1

## COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Jonathan House, *pro se*, and sues the Defendant and for his cause of action, declares and avers as follows:

## PRELIMINARY STATEMENT

1.       This action is brought by Jonathan House, who is a Black male of dark complexion, under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 (hereafter "Title VII"), for monetary and compensatory damages as well as equitable relief against Defendants growing out of the harassment based on race and sex of Plaintiff and race and sex discrimination against Plaintiff by multiple supervisors. This action also seeks to redress the retaliatory treatment Mr. House received after filing his administrative complaint.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

2.       Mr. House exhausted all administrative requirements that apply to the processing of his Complaint, including contacting an EEO Counselor on December 22, 2005, and filing a Charge of Discrimination with the Director, Office for Equal Opportunity, U.S. Department of the Interior, on January 26, 2006.

3.       On August 2, 2006, the Agency amended Mr. House's complaint at his request to include retaliation.

4.       On December 17, 2007, the United States Department of Interior, Office of Civil Rights, issued a Final Agency Decision.

## JURISDICTION

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(a)(3), and(a)(4), and 42 U.S.C. § 2000e-5 and pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds the amount specified in 28 U.S.C. § 1332.

## PARTIES

6.      Plaintiff, who is Black male of dark complexion, is an employee within the meaning of the Act.  Plaintiff was employed by the United States Department of the Interior in the District of Columbia.

7.      Defendant, the United States Department of the Interior, is an employer within the meaning of the Act.

## FACTS

### Discrimination and Harassment Against Plaintiff.

8.      Plaintiff Jonathan House began working for the Department of the Interior as a Financial Analyst, GS-11-10, on March 10, 2003. Effective April 4, 2004, Mr. House was promoted to a GS-12 by his supervisor, Theodore Woronka, the Associate Director in the Office of Financial Management.   While reporting to Mr. Woronka, Mr. House's performance was deemed to be excellent.

9.      Beginning in or around April 2004, Carol Sampson became a new Associate Director in the Office of Financial Management and therefore she became Mr. House's new supervisor.

- 3 -

10.    Almost immediately, Ms. Sampson demonstrated a baseless dislike for Mr. House and began mistreating him. For example, in July 2004, Ms. Sampson threatened to classify Mr. House as AWOL when he was absent for the birth of his son, even though he had properly requested time off. She constantly yelled, screamed, belittled, and berated Mr. House.

11.    Although Ms. Sampson provided Mr. House a rating of "Fully Successful" in his September 2004 performance review, she became upset on February 17, 2005 when Mr. House requested a meeting to discuss his career ladder promotion to a GS-13 which was due on March 10, 2005. An employee who is in a career ladder position is entitled to automatic promotion if he or she is performing at a Fully Successful performance level.

12.    On April 3, 2005, Ms. Sampson begrudgingly promoted Mr. House to a GS-13 position because he was on the career ladder track and because of the support of his focus leader, Bill Webber.

13.    In or around April 2005, Mr. House began working on the Performance and Accountability Report (PAR) team. By November 15, 2005, Mr. House completed two footnotes on the PAR project, which subsequently passed audit review. According to audit results, Mr. House's work in the debt collection area improved the Department's previously poor performance for referring delinquent debt to Treasury.

14.    Ms. Sampson had a habit of mistreating Mr. House in petty ways. For example, on or about June 24, 2005, Ms. Sampson threw a document on Mr. House's desk in a hostile manner and claimed that he had completed it incorrectly, although he had not. Similarly, although she officially rated Mr. House as "Fully Successful", she told him in person that his work was actually "Minimally Successful" and informed him that she was removing him from the PAR team. In or

– 4 –

around November 2005, Ms. Sampson denied Mr. House and two other African American males annual leave requests. These three men comprised at least one-half of the African American males who reported to Ms. Sampson.

15.    Ms. Sampson also mistreated Mr. House in more significant ways. For example, she excluded Mr. House from meetings which involved his work assignments, including meetings regarding Administrative Wage Garnishment (AWG), Activity Based Costing (ABC), Mineral Management Service (MMS) and the Bureau of Indian Affairs (BIA). Ms. Sampson excluded Mr. House from a Finance Officers Partnership meeting, in which the Administrative Wage Garnishment Policy was discussed.

16.    In the Fall of 2005, Mr. House received his 2005 Performance Evaluation. In 2005, Mr. House achieved all the targets set in his performance plan related to Asset Debt and the PAR project. In the Fall 2006, Ms. Sampson did not credit Mr. House for some of his most significant achievements. Instead, she gave credit for some of those achievements to Mr. House's coworkers in their performance review. She also later took credit for Mr. House's achievements in her own list of accomplishments, including Administrative Wage Garnishment policy, in an annual organizational assessment. Upon information and belief, Ms. Sampson gave Mr. House a Fully Successful performance rating, but similarly-situated employees outside of Mr. House's class who performed equal to Mr. House received ratings of Superior.

17.    Mr. House and Ms. Sampson met on November 29, 2005, to discuss his performance evaluation. During that meeting, Ms. Sampson informed Mr. House that though she was giving him a rating of Fully Successful, she actually believed that he was only Minimally Successful. After that

– 5 –

meeting, Ms. Sampson's harassment of Mr. House increased through her influence of team leaders and co-workers. Ms. Sampson berated Mr. House many times a week, often in front of coworkers.

18.    Based on his performance evaluation, Mr. House did not receive a bonus. Upon information and belief, similarly-situated employees outside of Mr. House's class who performed equal to Mr. House received bonuses.

19.    The following year, Mr. House was denied a performance award for participation on the Financial Statement (PAR) Team, which persons outside his protected class received. He was also denied a performance award for contribution in the area of Asset Debt Management, which others outside his protected class received.

20.    Out of the approximately five African American males who were supervised by Ms. Sampson, two have filed complaints of discrimination about her misconduct and three retired or were transferred in 2005 and 2006 because of her mistreatment of them.

21.    Mr. House often received misleading information from his team leads and Ms. Sampson.

22.    The verbal harassment would often take place in full view or within hearing of many of Mr. House's coworkers. As a result of Ms. Sampson's actions, Mr. House became isolated from his coworkers.

23.    During 2005 and 2006, Mr. House made repeated complaints to William Webber, his team leader, and to Dan Fletcher, Ms. Sampson's supervisor.

24.    Despite his repeated complaints, no corrective action was taken.

- 6 -

25.    During Mr. House's 2006 mid-year performance review with Ms. Sampson and Mona Williams, he was asked in a mocking way to explain why he <u>needed</u> to have meetings in order to write the a policy for AWG assignment.   The very next morning, Debbie Smith placed a cartoon sign on her office door which joked about having unnecessary meetings to escape from being lonely.

26.  In 2006, Ms. Sampson removed Mr. House from the Activity Based Costing (ABC) project.

27.    On June 28, 2006, Mr. House requested and was denied unscheduled leave when a government-wide liberal leave policy was in effect.

28.    Ms. Sampson and Mr. Fletcher denied training and conference attendance that other similarly-situated white employees received.  For example, Ms. Sampson arbitrarily and capriciously restricted Mr. House's attendance to the 2006 Annual Department Business Conference. Ms. Sampson and Mr. Fletcher arbitrarily and capriciously restricted Mr. House's attendance at the 2005 PAR Workshop. She denied Mr. House recommended accounting training course, although it had been previously suggested by his focus leader.  While she required him to attend the Financial Management Line of Business workshop as a subject matter expert for sessions that did not pertain to his job responsibilities, she informed him of her decision the day the workshop started.

29.    In December 2006, after complaining to Mr. Fletcher of retaliatory hostile work environment, Mr. House was required to report to three different focus leaders, who increased his responsibilities and gave him conflicting assignments.

30.    In 2007, Ms. Sampson recommended and directed Mr. House be removed from the Assets Debt Management Team, of which he was the lead Point of Contact for the PFM.

31.    In 2005, during the informal interview by the EEO counselor, Ms. Sampson attempted to intimidate the counselor by stating that she was very good friends with her boss, Interior's Director of EEO, Sharon Eller.

32.    The Department of the Interior repeatedly denied Mr. House's request for Alternative Dispute Resolution, even though it was mandatory according to a policy set by Nina Hatfield, the Assistant Secretary of Policy, Management, and Budget.

33.    The Department of the Interior failed to thoroughly investigate Mr. House's claim, even though witnesses wrote letters complaining of a lack of investigation, which was included as part of the Record of Investigation.

34.    Mr. House has suffered, is now suffering, and will continue to suffer emotional pain, sleeplessness, anxiety, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendants's conduct.

## COUNT I
Discrimination in Violation of Title VII

35.    Plaintiff incorporates Paragraphs 1 through 34 of this Complaint as if fully alleged herein.

36.    Defendants's discriminatory and disparate treatment of Plaintiff on account of his race and sex constitutes a violation of Title VII of the Civil Rights Act of 1964.

37.    Defendants's harassment of Plaintiff on account of his race and sex constitutes a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

## COUNT II
Retaliation in Violation of Title VII

- 8 -

38. Plaintiff incorporates Paragraphs 1 through 37 of this Complaint as if fully alleged herein.

39. Through the above-described acts and conduct, Defendant has retaliated against Plaintiff because of his complaints about discrimination in violation of the Civil Rights Act of 1991.

WHEREFORE, as to all Counts, Plaintiff prays that this Court:

a. Declare Defendants's conduct to be in violation of Plaintiff's civil rights;

b. Enjoin Defendants from engaging in such conduct;

c. Reinstate Plaintiff to the position he previously held;

d. Award Plaintiff front and back pay and benefits;

e. Award Plaintiff appropriate compensatory damages for Defendants violation of Plaintiff's civil rights;

f. Award Plaintiff his costs and attorneys' fees; and

g. Award Plaintiff such other and further relief as may be deemed just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff herewith demands a trial by jury on all issues.

Respectfully submitted,

_Jonathan House_

Jonathan House *pro se*

12213 Castle Pines Drive
Beltsville, MD 20705

- 9 -



# United States Department of the Interior

OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20240

DEC 1 7 2007



TAKE PRIDE
IN AMERICA

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Lippman, Semsker & Salb, LLC
c/o Mr. Richard H. Semsker, Esq.
7700 Old Georgetown Road
Bethesda, Maryland 20814

Re: Docket No. OS-06-006, Final Agency Decision

Dear Mr. Semsker:

This letter is written regarding the above-numbered complaint of discrimination filed by your Client, Jonathan House, against the U.S. Department of the Interior, Office of the Secretary, Office of Financial Management, on January 26, 2006.

We have thoroughly reviewed and analyzed the entire complaint file, including the Report of Investigation. Based on our review, we have prepared the enclosed analysis which explains the U.S. Department of the Interior's final decision regarding your client's complaint.

This notice is the final agency decision regarding your client's complaint. If your client is dissatisfied with this decision, please advise your client of the appeal rights included in the decision.

If you have questions regarding the decision, please contact Carmen J. Santana of my staff at (202) 208-4016.

Sincerely,

Sharon D. Eller
Director
Office of Civil Rights

Enclosure: EEOC Appeal Form
Jonathan House, Complainant
Alvin Dillings, Chief, Employment Complaints and Adjudication Division

08 0477
**FILED**

MAR 2 0 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



# United States Department of the Interior

OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20240
DEC 1 7 2007

**Office of Civil Rights**



|  |  |
|---|---|
| Jonathan House, ) | |
| Complainant ) | |
| ) | **AGENCY COMPLAINT NO.:** |
| ) | OS-06-006 |
| ) | |
| v. ) | |
| ) | |
| **DIRK KEMPTHORNE,** ) | |
| Secretary, ) | |
| Department of the Interior, ) | |
| Agency. ) | |

## FINAL AGENCY DECISION

## I.    INTRODUCTION

**Jonathan House** (the "Complainant") is a Financial Specialist, Office of Financial Management, U.S. Department of the Interior (the "Agency"), Office of the Secretary (OS), Washington, D.C. The Complainant contacted an EEO Counselor on December 22, 2005. The Equal Employment Opportunity (EEO) Counselor was unable to resolve the matter and issued the Complainant a Notice of Final Interview and Right to File a Formal Complaint on January 24, 2006. The Complainant filed a complaint of discrimination dated and filed on January 26, 2006. The complaint was accepted by the OS on March 8, 2006, and amended on August 2, 2006.

## II.    CLAIMS

Whether the Complainant was discriminated against on the bases of race (African-American), sex (male) and age (03/30/65 – 41 years of age) by being continuously subjected to a hostile work environment when:

1.    On November 29, 2005, he received an unfair performance rating for 2005.

2.    On November 16, 2005, he was denied annual leave for November 25, 2005, December 27-28, 2005, and January 3, 2006.

By letter dated August 2, 2006, the Agency amended the Complainant's complaint, that added reprisal as a basis regarding the following claims:

1.    On June 28, 2006, he was denied unscheduled leave.

2.    On May 22, 2006, he was denied training.

3.    On May 22, 2006, he was denied attendance to an annual training
      conference

The complaint was investigated from July 6, 2006, to September 15, 2006. The Report of
Investigation ("ROI") was issued to the Complainant on September 29, 2006. Following receipt
of the ROI, the Complainant had thirty (30) days to request a hearing before an Administrative
Judge ("AJ") at the Equal Employment Opportunity Commission (EEOC, the "Commission") or a
final agency decision without a hearing by the Agency. On June 6, 2007, the Complainant's
request for a hearing was dismissed by the Commission,[1] and the complaint was remanded to the
Agency for disposition. Therefore, this decision is being issued in accordance with EEOC
Regulation 29 C.F.R. §1614.110(b).

The following analysis and findings represent the U.S. Department of the Interior's Final Agency
Decision.

## III.    ANALYSIS METHODOLOGY – BURDENS OF PROOF

The Complainant claims he was discriminated against on the bases of race, sex, age and reprisal.
This complaint arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended
and the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended. These laws
make it unlawful for an executive agency to discriminate against any individual with respect to
his compensation, terms, conditions, or privileges of employment because of that individual's
race, color, religion, sex, national origin or age. 42 U.S.C. §2000e-2(a), 29 U.S.C. §623(a).

### A.    Harassment

In order to establish a prima facie case of harassment, a complainant must prove that: (1) he
belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment
was based on a prohibited factor; and (4) the harassment affected a term, condition, or privilege of
his employment and/or had the purpose or effect of unreasonably interfering with his work
environment and/or created a hostile, intimidating, or offensive work environment. Henson v.
City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982); Bundy v. Jackson, 641 F.2d 934, 943-44
(D.C. Cir. 1981); Katz v. Dole, 709 F. 2d 251 (4th Cir. 1983). An agency may avoid liability by
showing the acts complained of did not occur, the conduct complained of was not unwelcome, the
alleged harassment was not "sufficiently severe or pervasive" to alter the terms or conditions of
the complainant's employment or to create a hostile work environment, immediate and

---

[1] On May 31, 2007, the Complainant's Counsel requested that the hearing request be withdrawn and returned to the
Agency for a final agency decision.

2

appropriate corrective action was taken as soon as the employer was put on notice, or there is no basis for imputing liability to the employer under agency principles. Meritor Savings Bank F.S.B v. Vinson, 477 U.S. 57 (1986).

When considering a claim that an employee was harassed by a supervisor, the terms and conditions of employment are altered only if the harassment culminated in a tangible employment action or was sufficiently severe or pervasive to create a hostile work environment. A tangible employment action is a significant change in employment status, such as hiring, suspension, non-promotion, reassignment with significantly different responsibilities, or significant changes in benefits. Conversely, an employment action is not tangible if it results only in an insignificant change in the complainant's employment status. Burlington Industries, Inc. v. Elerth, 524 U.S. 742, 761 (1998).

When harassment does not result in a tangible employment action, the agency can raise an affirmative defense to liability by demonstrating that it exercised reasonable care to prevent and correct promptly any harassing behavior and that the employee unreasonably failed either to take advantage of any preventive or corrective opportunities provided by the agency or to avoid harm otherwise. Burlington Industries, 524 U.S. at 765; Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Enforcement Guidance: Vicarious Liability for Unlawful Harassment by Supervisors, Notice No. 915.002, p. 12 (June 19, 1999).

For harassment to be considered retaliatory conduct, it must be sufficiently pervasive or severe as to create a hostile work environment that significantly and adversely affects the emotional or psychological well-being of the employee, and must somehow be connected to that employee's previous EEO activity. Hicks v. Gates Rubber Co., 833 F.2d 1406, 1412-1413 (10th Cir. 1987); Gilbert v. City of Little Rock, Ark., 722 F.2d 1390, 1394 (8th Cir. 1983); Henson, 682 F.2d at 904; Bundy, 641 F.2d at 943-44.

**B.    Retaliation**

To establish a prima facie case based on reprisal, a complainant must show that: (1) he engaged in prior protected activity; (2) the agency official was aware of the protected activity; (3) he was subsequently disadvantaged by an adverse action; and (4) there is a causal link between the protected activity and adverse action. Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F. Supp. 318, 324 (D. Mass), aff'd 545 F.2d 222 (1st Cir. 1976); Manoharan v. Columbia University College of Physicians and Surgeons, 842 F. 2d 590, 593 (2nd Cir. 1988); Whitmire v. Department of the Air Force, EEOC Appeal No. 01A00340 (September 25, 2000). To support a finding of unlawful retaliation, there must be proof that the agency official took the action at issue because of complainant's prior protected activity and sought to deter complainant or others. EEOC Compliance Manual on Retaliation, No. 915.003, pp. 8-16 (May 20, 1998). For retaliation to be actionable, an employee must show that a reasonable employee would have found the challenged action materially adverse. Burlington Northern Santa Fe Railway Company v. White, 548 U.S. (2006).

3

The complainant at all times has the burden of proof.

## IV.    DISCUSSION AND ANALYSIS

### Claim 1 – Unfair Performance Rating

The Complainant states that on November 29, 2005, he received an unfair performance rating of "Fully Successful" from Ms. Sampson. (ROI, Exhibit F1, p. 4). The Complainant argues that his rating should have been "superior" based on his performance as a member of the Performance and Accountability Report ("PAR") Team (ROI, Exhibit F1, p. 4). Additionally, the Complainant claimed Ms. Sampson did not consider the Complainant's other accomplishments for that year. (ROI, Exhibit F1, p. 6). The Complainant alleges that his performance rating was influenced by **Daniel Fletcher** (Caucasian, male, DOB: unknown), Director, Office of Financial Management. According to the Complainant, Mr. Fletcher erroneously believes that the Complainant accused Mr. Fletcher of sexual harassment. Mr. Fletcher allegedly does not want an African-American male on the PAR team and seeks to hinder the Complainant's professional development. (ROI, Exhibit F1, p. 7). Ms. Sampson and Mr. Fletcher have allegedly failed to acknowledge the Complainant's contributions. (ROI, Exhibit F1, p. 7).

Management's Response

Ms. Sampson states that the Complainant's "Fully Successful" rating was appropriate. (ROI, Exhibit F2, p. 4). The "Fully Successful" rating indicates that "the employee has demonstrated good, sound performance that meets organizational goals." (ROI, Exhibit F2, p. 4). Ms. Sampson states that she did not discount the Complainant's performance on the PAR Team, but such tasks are expected of employees at the Complainant's grade level. According to Ms. Sampson, the PAR Team was directly supervised by **Patricia Halseth** (Caucasian, female, DOB: unknown, 45 years of age), Senior Staff Accountant, Office of Financial Management, who informed Ms. Sampson that the Complainant "required more guidance than would have been expected of a GS-13." (ROI, Exhibit F2, pp. 8-9). Ms. Sampson does not believe a "Fully Successful" rating is unfavorable and attests that the Complainant's race, sex and age did not influence the Complainant's rating. (ROI, Exhibit F2, p. 9).

Mr. Fletcher denies that he influenced the Complainant's performance rating, which was based on the assessments of Ms. Sampson and Ms. Halseth. (ROI, Exhibit F3, pp 3-4). Mr. Fletcher is not aware that the Complainant's race, sex or age was a motivating factor in the Complainant's rating. Mr. Fletcher denies retaliating against the Complainant and attempting to hinder the Complainant's development. He indicates that the racial make-up of the PAR Team was not a factor in the Complainant's rating. (ROI, Exhibit F3, p. 4).

Ms. Halseth supervised the Complainant's work on the PAR Team and characterizes the Complainant's skill level as "less than average for someone at his grade level." (ROI, Exhibit F4, p. 4). Ms. Halseth is not aware of any communication between Ms. Sampson and Mr. Fletcher regarding the Complainant's performance. Ms. Halseth shared her assessment of the

4

Complainant's performance with Ms. Sampson upon Ms. Sampson's request. Ms. Halseth did not consider the Complainant's race, sex or age when providing her assessment of the Complainant's work on the PAR team. (ROI, Exhibit F4, p. 5).

From the onset, the Fully Successfully rating is not an unfavorable rating, nor is it considered a bad rating. Also, there is nothing in the record suggesting that the Complainant was ever considered an unsatisfactory employee or that management was motivated by any discriminatory *animus* when he received the Fully Successful rating. Further, although the Complainant has failed to show he received an "unfair rating" he has also failed to show how he was aggrieved by the "Fully Successful" rating. Further, to pursue an EEO complaint, the employee must have standing; that is, the employee must frame his allegations in such a way as to "sufficiently claim personal injury as a result of the discriminatory practices." Edwards v. USPS, 01830784, 83 FEOR 20984 (1983). The Commission, in its regulations, requires that the Complainant be "aggrieved." Thus, while adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action.

Even if the Complainant had established harm, the Supreme Court in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed.2d 633 (1998), suggested that performance evaluations should not be considered adverse actions if they did not "affect the [employee's] grade or salary," and analogized performance evaluations to lateral transfers, which are not actionable injuries unless they "affect the terms, conditions, or privileges of [an employee's] employment or his future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." Therefore, since the Complainant did not sustain actionable "adverse action" as prescribed under Title VII, this claim fails to support the Complainant's assertion. Nevertheless, since the Complainant raised his Fully Successful rating as harassment it will be discussed later on in this analysis.

### Claim 2 – Denied Annual Leave

The Complainant states that on November 16, 2005, **Carol Sampson** (Caucasian, female, DOB: unknown, 55 years of age), Associate Director, Finance Policy and Operations, Office of Financial Management, denied the Complainant's request for leave on November 25, 2005, December 27-28, 2005, and January 3, 2006. According to the Complainant, Ms. Sampson cited lack of office coverage as the reason for the denial of the Complainant's requested leave. (ROI, Exhibit F1, p. 9). The Complainant asserts that the previous office policy required only one (1) or two (2) employees to cover the office, and Ms. Sampson "arbitrarily applied a new standard without re-issuance of a new policy." (ROI, Exhibit F1, p. 9).

Management's Response

According to Ms. Sampson, the Office of Financial Management has a longstanding practice of requesting that employees submit requests for leave six (6) months in advance of the dates requested. (ROI, Exhibit F2, p. 13). Employee preferences for leave dates in 2005 were solicited via e-mail on January 5, January 31, and May 23, 2005, to which the Complainant did not

respond. (ROI, Exhibit F2, p. 14). The Complainant did not submit a leave request until November 4, 2005. (ROI, Exhibit F2, p. 16). Notwithstanding, the Complainant's request for leave on December 29, 2005, was approved. (ROI, Exhibit F2, p. 13). Ms. Sampson admits that she could not accommodate the Complainant's request for additional dates due to insufficient office coverage. (ROI, Exhibit F2, p. 17). The Complainant's race, sex and age were not considerations in her leave denial. Five (5) employees other than the Complainant were also denied leave requested during the same period: **Deborah Williams** (race unknown, female, DOB: unknown), **Gordon Horwitz** (race unknown, male, DOB: unknown), **Theodore Cross** (race unknown, male, DOB: unknown), **Vernon Hubbard** (race unknown, male, DOB: unknown), and **Michael Anthony** (race unknown, male, DOB: unknown). (ROI, Exhibit F2, pp. 15-19; Exhibits F2(k) – F2(w)).

The Complainant was not singled out in regards to his leave and its subsequent denial. The record establishes that other employees were denied leave for the same reasons. Neither the Complainant, nor the record, indicates that the denial was based on any prohibited bases as specified by the Complainant. The Complainant always has the burden of proof and he has not met his burden. Most importantly, there is no evidence in the record that management was motivated by the Complainant's protected classes regarding claim 2.

### Reprisal - Denied unchelduled leave; Denied training on May 22, 2006; Denied attendance at a training conference

The Complainant alleges that Ms. Sampson retaliated against the Complainant in response to the instant complaint. On May 9, 2006, Ms. Sampson restricted the training courses to be attended by the Complainant at a conference scheduled for May 22, 2006. On May 16, 2006, the Complainant was informed by Ms. Sampson that the Complainant would not attend the conference due to other work commitments. On June 28, 2006, Ms. Sampson denied leave requested by the Complainant due to a family emergency.

Management's Response

Ms. Sampson states that she initially approved the Complainant's attendance at seven of eight training sessions requested by the Complainant. (ROI, Exhibit F2(y), p. 7). The training session that was not approved did not relate to the Complainant's job. (ROI, Exhibit F2(y), p. 7). Ms. Sampson states she also did not approve all of the selections of another employee, Mr. Horwitz. (ROI, Exhibit F2(y), p. 7). Ms. Sampson attests that on May 16, 2006, she learned that the Complainant had not completed an assignment to draft procedures for Administrative Wage Garnishment. (ROI, Exhibit F2(y), p. 8). Ms. Sampson determined that the Complainant would not complete the assignment by the June 1, 2006, deadline, if the Complainant attended training from May 22-25, 2006. Ms. Sampson asserts that neither the Complainant's race, sex, age nor his prior EEO activity played a role in her decisions. (ROI, Exhibit F2(y), p. 9).

Ms. Sampson allegedly retaliated against the Complainant when she denied emergency leave requested by the Complainant on June 28, 2006. (ROI, Exhibit F1, p. 42). According to

Ms. Sampson, on June 28, 2006, the Complainant left Ms. Sampson a voicemail requesting unscheduled annual leave for unspecified reasons. (ROI, Exhibit F2(y) p. 12). Ms. Sampson contacted the Complainant's home and relayed a message to the Complainant's wife that the Complainant should contact her. (ROI, Exhibit F2(y) p. 12). The Complainant subsequently called Ms. Sampson and informed her that he was cleaning out his father's basement, which had flooded. (ROI, Exhibit F2(y) p. 12). Ms. Sampson asked the Complainant if his father was in danger. The Complainant responded that if Ms. Sampson was denying the Complainant's requested leave, the Complainant would report to work. Ms. Sampson requested more information from the Complainant to understand the seriousness of the situation, but the Complainant provided no further information and repeated that he would report to work if necessary. (ROI, Exhibit F2(y) p. 12-13). Ms. Sampson instructed the Complainant to report to work because the Complainant was scheduled to attend an important Financial Management Line of Business meeting. (ROI, Exhibit F2(y) p. 12).   She notes that the Complainant's prior EEO activity was not a factor in Ms. Sampson's decision. (ROI, Exhibit F2(y) p. 7).

Regarding the request for the emergency leave it was up to the Complainant to establish it was an emergency. By the Complainant saying that he would come in, did not support his reason for the unscheduled leave and weakens his having to aid his father.

Management has the authority to deny training if an assignment has not been completed unless it was motivated by discrimination. The preponderance of evidence shows that management's decision was not based on any discriminatory *animus*.

## OTHER DOCUMENTATION RELATED TO THE COMPLAINANT'S CLAIM

According to the Workforce Profile, as of September 2006, there were fourteen (14) employees in the Financial Management Policy, Operations, and Accountability Group: five (5) employees (approximately 36 percent) are Caucasian, six (6) employees (approximately 43 percent) are African-American, and the races of three (3) employees are unknown. Ten (10) employees (approximately 71 percent) are female, and four (4) employees (approximately 29 percent) are male. One (1) employee (approximately 7 percent) is under 40 years of age, and thirteen (13) employees (approximately 93 percent) are forty (40) years of age or older. No employees other than the Complainant have any prior EEO activity.

Regarding the fourteen (14) employees in the Financial Management Policy, Operations, and Accountability Group who received "fully successful" or lower from May, 2003, to May, 2006, there was a total of six (6) employees who received Fully Successful or lower, three (3) were female, and three (3) were males. Of the six there were four (4) African-Americans and two (2) Caucasians. (ROI, Exhibit F13).

Affidavit and Rebuttal of the Complainant  (ROI, Exhibit F1)

Affidavit of Carol Sampson (ROI, Exhibit F2)

Affidavit of Daniel Fletcher (ROI, Exhibit F3)

Affidavit of Patricia Halseth (ROI, Exhibit F4)

Affidavit of Debra Carey (ROI, Exhibit F5)

Organization Roster (ROI, Exhibit F6)

Performance Appraisal Handbook (ROI, Exhibit F7)

Departmental Manual, Part 370 Chapter 630, Absence and Leave (ROI, Exhibit F8)

Complainant's Employee Performance Appraisals (ROI, Exhibit F10)

## V.    FINDINGS

The evidence in the record shows that the Complainant has failed to establish a prima facie case of age discrimination under a disparate treatment theory. While the Complainant has established that he is within the protected age category, he has failed to establish that he suffered an adverse employment action with respect his benefits or conditions at work. Also, he did not establish that other individuals outside his protected classes were treated better.

It is apparent from the Complainant's statement that he was unhappy with management's actions. However, there is no evidence to support that this had anything to do with his age. In employment discrimination cases based on age, the Complainant must provide evidence that age was a motivating factor. Without more, it is not possible to conclude that age played any role in management's decisions or that age made a difference in the outcome of his claims. Thus, he has failed to establish a prima facie case of discrimination based on age.

Regarding reprisal, obviously, the Complainant must offer evidence that the Agency official(s) who took the action were aware of his prior participation or opposition activity (Demeier v. Department of the Air Force, EEOC Appeal No. 01A11166 (May 23, 2002)) but establishing that alone will not enable the Complainant to establish the causal connection element of a prima facie case. Garcia-Gannon v. Department of the Air Force, EEOC Appeal No. 01821195, (June 30, 1983). The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. Clark County School District v. Breeden, 532 U.S. 286 (2001).

When a complainant is relying on temporal proximity to establish a causal connection between prior protected activity and a current adverse employment action, that proximity must be "very close." Time gaps of three (3) to four (4) months between an individual's prior EEO activity and the current adverse employment action were too attenuated to suggest an inference of retaliation. The Complainant stated he contacted the EEO Counselor on December 22, 2005. According to the Complainant the alleged reprisal actions occurred on May 22, 2006, and June 28, 2006, both of which are not within the requisite temporal proximity.

8

Affidavit of Daniel Fletcher (ROI, Exhibit F3)

Affidavit of Patricia Halseth (ROI, Exhibit F4)

Affidavit of Debra Carey (ROI, Exhibit F5)

Organization Roster (ROI, Exhibit F6)

Performance Appraisal Handbook (ROI, Exhibit F7)

Departmental Manual, Part 370 Chapter 630, Absence and Leave (ROI, Exhibit F8)

Complainant's Employee Performance Appraisals (ROI, Exhibit F10)

## V.    FINDINGS

The evidence in the record shows that the Complainant has failed to establish a <u>prima facie</u> case of age discrimination under a disparate treatment theory. While the Complainant has established that he is within the protected age category, he has failed to establish that he suffered an adverse employment action with respect his benefits or conditions at work. Also, he did not establish that other individuals outside his protected classes were treated better.

It is apparent from the Complainant's statement that he was unhappy with management's actions. However, there is no evidence to support that this had anything to do with his age. In employment discrimination cases based on age, the Complainant must provide evidence that age was a motivating factor. Without more, it is not possible to conclude that age played any role in management's decisions or that age made a difference in the outcome of his claims. Thus, he has failed to establish a <u>prima facie</u> case of discrimination based on age.

Regarding reprisal, obviously, the Complainant must offer evidence that the Agency official(s) who took the action were aware of his prior participation or opposition activity (<u>Demeier v. Department of the Air Force</u>, EEOC Appeal No. 01A11166 (May 23, 2002)) but establishing that alone will not enable the Complainant to establish the causal connection element of a *prima facie* case. <u>Garcia-Gannon v. Department of the Air Force</u>, EEOC Appeal No. 01821195, (June 30, 1983). The causal connection may be inferred by evidence that the protected conduct was closely followed by the adverse action. <u>Clark County School District v. Breeden</u>, 532 U.S. 286 (2001).

When a complainant is relying on temporal proximity to establish a causal connection between prior protected activity and a current adverse employment action, that proximity must be "very close." Time gaps of three (3) to four (4) months between an individual's prior EEO activity and the current adverse employment action were too attenuated to suggest an inference of retaliation. The Complainant stated he contacted the EEO Counselor on December 22, 2005. According to the Complainant the alleged reprisal actions occurred on May 22, 2006, and June 28, 2006, both of which are not within the requisite temporal proximity.

The Commission has rendered decisions establishing much shorter time frames to establish the requisite temporal proximity. See, for example, Heads v. U.S. Postal Service, EEOC Appeal No. 01A51547 (June 2, 2005); Archibald v. Department of Housing and Urban Development, EEOC Appeal No. 01A54280 (September 22, 2005); and Lynch v. U.S. Postal Service, EEOC Appeal No. 01A24705 (August 14, 2003). To support a finding of unlawful retaliation, there must be proof that the Agency official(s) took the action at issue because of Complainant's prior protected activity and sought to deter Complainant or others, which the Complainant failed to establish. (EEOC Compliance Manual on Retaliation, No. 915.003 (May 20, 1998), pages 8-16).

At all times, the ultimate burden of persuasion remains with the Complainant. The Complainant must then show that the reason given by the Agency was not the real reason for the employment decision and that the discriminatory bases claimed were the reasons for the action, which he did not substantiate.

Concerning harassment, the Supreme Court has held that a work environment which is permeated with "...discriminatory intimidation, ridicule, and insult..." that is sufficiently severe and pervasive to alter the terms and conditions of an individual's employment and which creates an abusive work environment violates the law. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). The conduct in question is viewed from the standpoint of a reasonable person, taking into account the particular context in which it occurred, including the severity and frequency of the conduct and the effect on the employee's performance. More than a few incidents must have occurred and there must have been a steady barrage of opprobrious comments. Harris, Id. Johnson v. Bunny Bread Co., 646 F. 2d 1250, at 1257 (8th Cir. 1981); and Snell v. Suffolk County, 782 F. 2d 1094 (2nd Cir. 1986). See also Backo . U.S. Postal Service, EEOC Request No. 05960227 (June 10, 1986) and McGivern v. U.S. Postal Service, EEOC Request No. 05930481 (March 17, 1994).

The record does not support the Complainant's claim of harassment or hostile work environment. The Complainant's conditions of employment were not so altered or sufficiently pervasive or severe as to create a hostile work environment. Burlington Industries, 524 U.S. at 742; Faragher, 524 U.S. at 807; DiFruscio v. Social Security Administration, EEOC Appeal No. 01982006 (September 13, 2000) (routine work assignments, instructions, and admonishments did not rise to a level of harassment or disparate treatment by the supervisor against the appellant).

It is the responsibility of the EEO process to determine whether unlawful discrimination occurred in management actions. Here, the Complainant alleged that he was subjected to unlawful discrimination because of his age, race, sex, reprisal and was subjected to a hostile work environment. The preponderance of the evidence does not substantiate unlawful discrimination or that the Complainant was subjected to a "severe or pervasive," hostile work environment.

9

## VI.    CONCLUSIONS

At all times, the ultimate burden of persuasion remains with the Complainant. The Complainant must show that the reasons given by the Agency were not the real reason for the employment decisions and that the discriminatory bases claimed were the reason for the action.

The preponderance of the evidence clearly supports a conclusion that the Complainant has failed to establish that his performance rating, denial of annual leave, were based on discrimination. Moreover, the Complainant failed to submit any evidence into the record that the reasons articulated by the Agency are not the true reasons for their actions. Simply stated, the Complainant has not met the burden of establishing that the Agency's articulated reasons were a pretext to mask prohibited discrimination. Finally, the Complainant has not presented any evidence to indicate that the Agency officials harbored a discriminatory *animus* towards members of the Complainant's protected groups or sought to deter him or others.

While it is not necessary for the Complainant to rely strictly on comparative evidence in order to establish an inference of discriminatory motivation necessary to support a *prima facie* case, O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996), the Complainant has not presented, nor does the record reflect, other evidence that an inference of discrimination exists.

After carefully considering the entire record, and applying the legal standards outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973); Loeb v. Textron, Incorporated, 600 F.2d 1003 (1st Cir. 1973); and Hochstadt v. Worcester Foundation for Experimental Biology, Inc., 425 F.Supp. 318 (D.Mass), aff'd 545 F.2d 222 (1st Cir. 1976); we find that the Complainant, Jonathan House, has failed to prove that he was subjected to discrimination as alleged.

Based upon the above findings, no corrective action or attorney fees are warranted. This is the Final Agency Decision of the U. S. Department of the Interior. If the Complainant is dissatisfied with this decision, he may exercise the following appeal rights.

## APPEAL RIGHTS TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

29 C.F.R §1614.402 (a) provides that an appeal of the Agency's final decision to the Equal Employment Opportunity Commission must be filed by an Appellant within thirty (30) days of receipt of an agency's or Administrative Judge's dismissal, final action, or decision. If the Appellant is represented by an attorney of record, the 30-day time limit shall begin to run from the date of receipt by the attorney of the notice of dismissal, final action, or final decision without a hearing. All such appeals must be filed with the Equal Employment Opportunity Commission (Commission) at the following address:

Equal Employment Opportunity Commission
Office of Federal Operations

10

Post Office Box 19848
Washington, D.C. 20046

As an alternative to mailing, appeals may be hand-delivered to:

Equal Employment Opportunity Commission
Office of Federal Operations
1801 L Street, N.W.
Washington, D.C. 20507

As a further alternative, appeals may be sent by facsimile (FAX) to:

(202) 663-7022

The Appellant shall furnish a copy of the appeal to the agency at the same time it is filed with the Commission. In or attached to the appeal to the Commission, the Appellant must certify the date and method by which service was made on the opposing party. The individual Appellant should use EEOC Form 573, Notice of Appeal/Petition (copy enclosed).

## **CIVIL ACTIONS**

The Appellant also has the right to file a civil action in an appropriate United States District Court. If the Appellant decides to file a civil action he must file:

- Within ninety (90) days of receipt of the Final Decision, if no appeal has been filed; or
- Within ninety (90) days of receipt of the Commission's final decision on an appeal; or
- After 180 calendar days from the date of filing an appeal with the Commission, if there has been no final decision by the Commission.

If the Appellant files a civil action involving this complaint, **the Appellant must specifically name DIRK KEMPTHORNE, Secretary of the U.S. Department of the Interior, as defendant**. Failure to do so may result in the loss of any judicial redress to which the Appellant may be entitled.

If the Appellant decides to file a civil action and is unable to afford Counsel, the Civil Rights Act gives the Court discretionary authority to appoint Counsel without payment of fees or costs by the Appellant. The granting or the denial of the request is within the sole discretion of the Court. The request and the civil action must be filed within 90 days of the date the final decision is received.

11

Please note that, "Filing a civil action under 29 C.F.R. §1614.408 or 29 C.F.R §1614.409 shall terminate Commission processing of the appeal.  If private suit is filed subsequent to the filing of an appeal, the parties are requested to notify the Commission in writing."

Sharon D. Eller
Director
Office for Civil Rights

17 December 2007
Date

Enclosure: EEOC Appeal Form

cc:    Complainant's Representative, Richard H. Semsker, Esq.
        Complainant, Jonathan House
        Agency's Representative, Kerry Creighton, Esq.
        Chief, Employment Complaints and Adjudication Division, Alvin Dillings

12



## LIPPMAN, SEMSKER & SALB, LLC

Founded Solaman G. Lippman 1972 – 2002

June 11, 2007

Jonathan House
12213 Castle Pine Drive
Beltsville, Maryland 20705

Re:    House v. Department of the Interior;
       EEOC Case No. 570-2007-00214X.

Dear Mr. House:

This letter is to confirm that the Retainer Agreement sent to you obligated Lippman, Semskser & Salb to litigate your claim before an Administrative Law Judge.  However, we have decided to withdraw you claim from the Administrative Law Judge and pursue this matter in the District Court and therefore Lippman, Semsker & Salb shall be obligated to litigate your claim in the United States District Court for the District of Columbia.

Also, per our discussion, Lippman, Semsker & Salb, LLC will not charge you for the time to draft the Complaint for the District Court.

Please call us with any questions, comments, or concerns.


Very truly yours,
LIPPMAN, SEMSKER & SALB, LLC



Richard H. Semsker / (MS)
by Richard H. Semsker, Esq.

| Ford Credit | Mini-FAX Transmittal | Date 2/11/08    i |
|---|---|---|
| To Gwen D'zourt | | From Jonathan House    Pages |
| FAX# | | FAX# |
| Location | | Location |
| Phone# | | Phone# 240 426-8437 |
| Comments: | | |
| FC 18101 JUN 91 | | |

7700 Old Georgetown Road       Tel: 301.656.6905       www.lsslawyers.com
Suite 500                       Fax: 301.656.6906
Bethesda, MD 20814

H
08-477
RJL

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

JONATHAN HOUSE

37888

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jonathan House
12213 Castle Pine Drive
Beltsville, Maryland 20705 (301) 931-8448
— 301 931-8448

## DEFENDANTS

DIRK KEMPTHORNE, ET AL.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:08-cv-00477
Assigned To : Leon, Richard J.
Assign. Date : 3/20/2008
Description: Employ. Discrim.

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

◉ 2 U.S. Government
Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust

☐ 410 Antitrust

### ○ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)      OR      ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

⑤

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**ORIGIN**

○ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Harassment and discrimination based on race and sex of Plaintiff.

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☒  NO ☐ |

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form.

DATE March 19, 2008     SIGNATURE OF ATTORNEY OF RECORD     *Jonathan E. House*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

